JS-6

**UNITED STATES DISTRICT COURT**
**CENTRAL DISTRICT OF CALIFORNIA**

LOS ANGELES WATERKEEPER, a California non-profit association,

Plaintiff,

v.

JIMCO, INC., a California corporation,

Defendant.

Case No.: 2:25-cv-09618-PVC

**CONSENT DECREE**

# CONSENT DECREE

**WHEREAS,** Plaintiff Los Angeles Waterkeeper ("LA Waterkeeper" or "Plaintiff") is a 501(c)(3) non-profit public benefit corporation organized under the laws of the State of California, with its main office in Los Angeles, California;

**WHEREAS,** LA Waterkeeper is dedicated to the preservation, protection and defense of the surface, ground, coastal and ocean waters of Los Angeles County from all sources of pollution and degradation;

**WHEREAS**, Defendant Jimco, Inc ("Defendant" or "Jimco") owns and operates a facility at 1540 S. Greenwood Ave., Montebello, California 90640, under Waste Discharger Identification number 4 191029808 ("Facility");

**WHEREAS**, the Facility's industrial activities consist of scrap metal recovery, warehousing, and storage. The Facility is categorized under Standard Industrial Classification ("SIC") Code 4226 (Special Warehousing and Storage, NEC) and 5093 (Scrap and Waste Materials);

**WHEREAS**, storm water discharges associated with industrial activity at the Facility are regulated by the National Pollutant Discharge Elimination System ("NPDES") General Permit No. CAS000001 [State Water Resources Control Board], Water Quality Order 2014-0057-DWQ, as amended by Order Nos. 2015-0122-DWQ and 2018-0028-DWQ incorporating: 1) Federal Sufficiently Sensitive Test Method Ruling; 2) Total Maximum Daily Load Implementation Requirements; and 3) Statewide Compliance Options Incentivizing On-Site or Regional Storm Water Capture and Use, at the Facility ("General Permit" or "Permit")[1], and the Federal

---

[1] Any references to the "General Permit" or "Permit" herein shall be to the then-effective version, regardless of whether such changes are the result of amendments, revisions, reissuance, or similar modification of material terms. Any reference in this Consent Decree to specific sections or subsections of the General Permit that are moved, modified, or otherwise changed in a subsequent version of the General Permit shall be to such subsequent reference(s) as if set forth herein, *e.g.*, the current §XI.B.6.c may be renumbered as §XI.B.7.c, combined into the current §XI.B.6.d, or split into a new §XI.B.6.c and §XI.B.6.d.

Water Pollution Control Act, 33 U.S.C. §§ 1251, *et seq.* ("Clean Water Act" or "CWA"), Sections 301(a) and 402, 33 U.S.C. §§ 1311(a), 1342;

**WHEREAS**, Defendant's operations at the Facility have the potential to result in discharges of pollutants into waters of the United States and are regulated by the Clean Water Act Sections 301(a) and 402. 33 U.S.C. §§ 1311(a), 1342;

**WHEREAS**, the General Permit requires all permittees, including Defendant, to comply with, inter alia, the following mandates: (1) develop and implement a storm water pollution prevention plan and a storm water monitoring implementation plan, (2) control pollutant discharges using, as applicable, best available technology economically achievable or best conventional pollutant control technology to prevent or reduce pollutants through the development and application of Best Management Practices, which must be detailed in and timely updated in the SWPPP, (3) reduce and eliminate discharges necessary to comply with any and all applicable Water Quality Standards, and (4) implement a monitoring and reporting program, including the MIP, designed to assess compliance with the Permit;

**WHEREAS**, on August 5, 2025, Plaintiff issued a notice of intent to file suit ("60-Day Notice Letter") to Defendant, its registered agent, the Administrator of the United States Environmental Protection Agency ("EPA"), the Executive Director of the State Water Resources Control Board ("State Board"), the Executive Officer of the Los Angeles Regional Water Quality Control Board ("Regional Board"), the Regional Administrator of EPA Region IX, and the U.S. Attorney General of the U.S. Department of Justice, alleging violations of the Clean Water Act and the General Permit;

**WHEREAS**, on October 8, 2025, LA Waterkeeper filed a complaint against Defendant in the Central District of California ("Court"), Civil Case No. 2:25-cv-09618-MAA ("Complaint");

**WHEREAS**, Plaintiff's Complaint alleged violations of the General Permit and the Clean Water Act for Defendant's discharges of pollutants into storm drains and surface waters, including Rio Hondo and Los Angeles River (collectively, "Receiving Waters");

**WHEREAS,** Defendant denies all factual and legal allegations in Plaintiff's 60-Day Notice Letter and Complaint, and alleges that Defendant has been in full compliance with the General Permit at all relevant times, consistent with a January 30, 2026 City of Montebello stormwater inspection report stating that "no corrective actions were required;"

**WHEREAS**, without waiving Defendant's position that it has fully complied with the General Permit in all material respects and at all relevant times, Plaintiff and Defendant (collectively, "Settling Parties" or "Parties") agree that it is in their mutual interest to enter into a Consent Decree setting forth terms and conditions appropriate to resolving the allegations set forth in the 60-Day Notice Letter and Complaint without further proceedings;

**WHEREAS**, all actions taken by Defendant pursuant to this Consent Decree shall be made in compliance with all applicable federal, state and local laws, rules and regulations.

**NOW, THEREFORE, IT IS HEREBY STIPULATED BETWEEN THE SETTLING PARTIES AND ORDERED AND DECREED BY THE COURT AS FOLLOWS:**

1. The Court has jurisdiction over the subject matter of this action pursuant to Section 505(a)(1)(A) of the CWA, 33 U.S.C. § 1365(a)(1)(A).

2. Venue is appropriate in the Central District Court pursuant to Section 505(c)(1) of the CWA, 33 U.S.C. § 1365(c)(1), because the Facility at which the alleged violations are taking place is located within this District.

3. The Complaint states a claim upon which relief may be granted against Defendant pursuant to Section 505 of the CWA, 33 U.S.C. § 1365.

4. LA Waterkeeper has standing to bring this action.

5. The Court shall retain jurisdiction over this matter for the purposes of interpreting, modifying, or enforcing the terms and conditions of this Consent Decree and adjudicating all disputes among the Parties that may arise under the provisions of this Consent Decree, for the Term (as defined below) of this Consent Decree including for as long as necessary for the Court to resolve any motion to enforce this Consent Decree, but only regarding issues raised within the Term. The Court shall have the power to enforce this Consent Decree with all available legal and equitable remedies, including contempt.

## I. OBJECTIVES

6. It is the express purpose of the Settling Parties through this Consent Decree to further the objectives of the Clean Water Act, and to resolve all issues alleged by LA Waterkeeper in its 60-Day Notice Letter and Complaint. These objectives include compliance or continued compliance with the provisions of this Consent Decree, compliance with all terms and conditions of the General Permit, and compliance with all applicable sections of the CWA.

7. In light of these objectives and as set forth fully below, Defendant agrees to comply with the provisions of this Consent Decree, terms and conditions of the General Permit, and all applicable sections of the CWA at the Facility.

## II. AGENCY REVIEW AND DEFINITIONS

### A. AGENCY REVIEW OF CONSENT DECREE

8. Agency Review. Plaintiff shall submit this Consent Decree to the United States Department of Justice and the United States EPA (the "Federal Agencies") for agency review consistent with 40 C.F.R. § 135.5. The agency review period expires forty-five (45) calendar days after receipt by the Federal Agencies, as evidenced by

certified return receipts, or upon the date that the Federal Agencies provide a no objection letter, whichever is earlier ("Agency Review Period"). In the event that the Federal Agencies object to entry of this Consent Decree or to any portion of this Consent Decree, the Parties agree to meet and confer to attempt to resolve the issue(s) raised by the Federal Agencies. If the Parties are unable to resolve any issue(s) raised by the Federal Agencies in their comments, the Parties agree to expeditiously seek a settlement conference with the assigned Magistrate Judge to resolve any issue(s).

9. Court Notice. Plaintiff shall notify the Court of the receipt date by the Federal Agencies, as required by 40 C.F.R. § 135.5, in order to coordinate the Court's calendar with the 45-day review period.

10. Entry of Consent Decree. Following the expiration of the Agency Review Period, Plaintiff shall submit the Consent Decree to the Court for entry.

**B. DEFINITIONS**

11. Unless otherwise expressly defined herein, terms used in this Consent Decree which are defined in the CWA or in regulations or rules promulgated under the CWA have the meaning assigned to them in the statutes or regulations or rules. Whenever terms listed below are used in this Consent Decree, whether or not capitalized, the following definitions apply:

a. "BAT" means the Best Available Technology Economically Achievable.

b. "BCT" means the Best Conventional Pollutant Control Technology, and collectively with BAT is referred to herein as "BAT/BCT."

c. "BMPs" means Best Management Practices as defined in Attachment C (Glossary) of the General Permit.

d. "Consent Decree" means this Consent Decree and any attachments or documents incorporated by reference.

e. "Day" means a calendar day. In computing any period of time under this Consent Decree, where the last day of such period is a Saturday, Sunday, or Federal or State Holiday, the period runs until the close of business on the next day that is not a Saturday, Sunday, or Federal or State Holiday.

f. "Design Storm" means the design storm calculated in accordance with the design storm standards set forth in General Permit for Volume-based BMPs (General Permit § X.H.6.a.) or Flow-based BMPs (General Permit § X.H.6.b.).

g. "Discharge Point" means each discharge location designated in the then-current SWPPP for the Facility.

h. "Effective Date" means the effective date of this Consent Decree, which shall be the date of full execution by the Parties.

i. "Entry Date" means the day this Consent Decree is signed and entered by the Court.

j. "Forecasted Rain Event" means a rain event with a greater than 50% probability of occurrence of 0.1 inches as determined by the National Oceanic and Atmospheric Administration (http://forecast.weather.gov/) for "90640, Montebello, CA, USA."

k. "MIP" means a Monitoring Implementation Plan.

l. "PPT" means Pollution Prevention Team.

m. "Qualified Industrial Storm Water Practitioner" or "QISP" shall have the definition set forth in Section IX.A.1 of the General Permit.

n. "Qualifying Storm Event" or "QSE" shall have the definition set forth in Section XI.B.1 of the General Permit.

o. "Reporting Year" means the period from July 1 of a given calendar year to June 30 of the following calendar year.

p. "SMARTS" means the California State Water Resources Control Board's Stormwater Multiple Application and Report Tracking System.

q. "SWPPP" means a Storm Water Pollution Prevention Plan.

r. "Term" means the period between the Effective Date and the "Termination Date."

s. "Termination Date" means the latest of:

i. June 30 following two (2) years from the Effective Date;

ii. seven (7) days from the conclusion of any proceeding or process to enforce the Consent Decree initiated prior to June 30 following two (2) years after the Effective Date; or

iii. seven (7) days from Defendant's completion of all payments and other affirmative duties required by this Consent Decree.

iv. Alternatively, the Consent Decree will terminate ten (10) business days after the Defendant has notified LA Waterkeeper that it has received written approval/ acceptance notification from the LA Regional Board for "No Exposure Certification" ("NEC") coverage at the Facility following an inspection that confirms compliance with all NEC requirements of the General Permit, subject to requirements set forth in detail in Paragraphs 18-19 below.

t. "Wet Season" means the period beginning October 1st of any given calendar year and ending June 30th of the following calendar year.

## III. COMMITMENTS OF THE SETTLING PARTIES

### A. Storm Water Pollution Control Best Management Practices

12. Non-Storm Water Discharge Prohibition. Any unauthorized non-storm water discharge, as defined in the General Permit, shall be a violation of this Consent Decree.

13. Current and Additional Best Management Practices. At all times, Defendant shall implement BMPs identified in its SWPPP and BMPs described herein and shall develop and implement additional BMPs as necessary to comply with the provisions of this Consent Decree, the General Permit, and the Clean Water Act.

14. Rain Gauge/Sensor. Defendant shall install and maintain an electronic rain gauge or sensor at the Facility within fifteen (15) days of the Effective Date. The rain gauge/sensor shall be capable of measuring precipitation down to at least 0.1 inches, and record start/stop times and non-cumulative precipitation for each rain event. During the Term, Defendant shall collect data using the gauge/sensor for all precipitation events to the nearest 0.1 inch, including start/stop times. Data from the rain gauge/sensor shall be conclusive of precipitation quantities and timing for purposes of this Consent Decree, except in the event of equipment malfunctions caused by something outside of Defendant's control. In the event of a rain gauge malfunction, Defendant shall use rain data from National Oceanic and Atmospheric Administration (http://forecast.weather.gov/) for "90640, Montebello, CA, USA" for purposes of precipitation quantities and timing.

15. Site Map Improvements. Within forty-five (45) days of the Effective Date, Defendant shall improve the current site map at the Facility to include, if not already included:

a. Access roads and areas (including the paved area between the West Yard and the East Yard) within the Facility Boundary;

b. All potential discharge points from the Facility including, if applicable:

i. Discharge Point 1 (or 1a, 1b, etc.): Location(s) where water has the potential to discharge from the West Yard;

ii. Discharge Point 2 (or 2a, 2b, etc.): Location(s) where water has the potential to discharge from the East Yard (including from eastern and northern border); and

iii. Discharge Point 3 (or 3a, 3b, 4, etc.): Location(s) where water has the potential to discharge from any shared road or area where Defendant's industrial activities[2] occur to a road or area not used by Defendant for industrial activities (i.e. from the road that separates the East and West Yards to the road north of the West Yard);

16. Capture, Retention, and Haul-Off of Storm Water at the Facility: Defendant shall continue its effort to capture, retain, and haul storm water associated with industrial activity as set forth in its current SWPPP subject to the following additional structural, operational and monitoring requirements:

a. Install or maintain a barrier that prevents all storm water run-on from the common road on to the northern boundary of the West Yard onto the West Yard and all storm water run-off from the West Yard on to the same common road;

b. Retain stormwater in nine (9) 250-gallon and one (1) 350-gallon to be hauled off-site by a contracted hauling company for legal off-site disposal;

c. Designate Responsible Personnel who shall arrange for stormwater removal and ensure that tank capacity is restored in a

[2] Industrial activity shall be defined in accordance with the General Permit.

manner sufficient to capture stormwater from the next rain event, as applicable and consistent with Paragraph 16(d);

d. Within thirty (30) days of the Effective Date, develop and implement an operating procedure designed to maintain sufficient available storage capacity in the sump system and totes to capture and contain reasonably predictable quantities of storm water based on historical rainfall data for Montebello, California and the calculated or demonstrated storage capacity of the sump system and totes. The procedure shall include: (i) measures intended to maintain available storage capacity sufficient to contain up to 125% of the forecasted stormwater volume associated with anticipated rain events; and (ii) alternative response measures to address storm events reasonably expected to exceed available storage capacity (e.g., filtering and sampling);

e. Maintain storm water hauling manifests and disposal records on-site;

f. Prepare and keep a record of the start time, duration, and end time of all rain events that occur at the Facility using data collected with the rain gauge installed pursuant to Paragraph 14 above;

g. Take video recordings during or outside of operating hours sufficient to provide an accurate representation of conditions at the locations identified below during at least two rain events with predicted precipitation for Montebello California of at least 0.15 inches per hour for at least three (3) hours (as predicted twenty-four (24) hours to the beginning of the rain event). The video recordings do not need to capture the entire duration of each storm event, particularly longer events, but must include representative

samples of storm conditions sufficient to accurately depict conditions during the storm event. The locations to be documented include:

i. Each potential Discharge Point;

ii. The entire perimeter of both the East and West yards, including the access road;

iii. The sump and associated storage capacity;

iv. Any and all ponding areas in the East and West Yards; and

v. Drainage flows in the East/West Yards and common roads.

Plaintiff may make timely and reasonable requests that Defendant capture required video recordings during specific storm events, which timely and reasonable requests Defendant shall accommodate.

17. Non-Structural BMPs for the Facility. As soon as possible but no later than forty-five (45) days after the Effective Date, Defendant shall develop and implement the following non-structural BMPs at the Facility to the extent not already established:

a. Sweeping. Implement a mechanical or machine sweeping program (including sweeping by hand in areas that cannot be accessed by mechanical or machine sweepers) on all paved areas at least once per month outside of the Wet Season, once per week during the Wet Season, and within twenty-four (24) hours prior to a Forecasted Rain Event;

b. Store Industrial Materials Under Cover. Store industrial materials and/or welding and cutting machinery under permanent roofs or deploy waterproof tarps over all outdoor industrial material, and waste scrap prior to a Forecasted Rain Event;

c. Cover Outdoor Bins. Ensure that all outdoor bins containing scrap material are outfitted with integrated covers that are kept closed when not in use;

d. Remove Abandoned Materials. Remove, and prevent the long-term storage of, all unused, inutile, and/or abandoned racks, vehicles, equipment, paint and waste scrap materials from the entire property;

e. Maintenance. Institute an equipment and vehicle maintenance program that ensures:

i. no maintenance activities with the potential to contaminate stormwater occur outdoors during wet weather, unless such maintenance is required for safe operation of the Facility, *e.g.*, the forklift breaks down in a location that prevents ingress/egress;

ii. maintenance activities occur only in designated work areas or beneath covered maintenance areas; and

iii. when maintenance activities must be performed outdoors, action shall be taken to immediately contain, capture, and clean up any discharge or spills of waste fluids to the ground.

f. Wet Season BMPs.

i. Wattles/ Filters/ Socks. Prior to the start of each Wet Season, ensure that the necessary number of wattles or filters or socks (biochar or other equivalent media) are available onsite in case of needed deployment at potential discharge locations (as identified pursuant to Paragraph 15. above and as noted in the SWPPP), including but not

limited to in the East Yard. Replace, employ and secure new wattles or filters or socks as necessary when degraded, damaged in a manner that would affect their ability to reduce pollutant concentrations;

ii. Pre-Rain Protocol. Within twenty-four (24) hours prior to a Forecasted Rain Event, ensure that the necessary number of wattles or filters or socks (biochar or other equivalent media) are available onsite in case of needed deployment at potential discharge locations (as identified pursuant to Paragraph 15. above and as noted in the SWPPP), including but not limited to in the East Yard. Remove any exposed waste material and cover all industrial materials, debris and scrap bins, and trash cans with tarps, lids, or other coverings sufficient to prevent exposure to rainfall, or otherwise move them to a storm-resistant shelter; Ensure all drains are free of clogs and operating as intended.

g. Confirm BMPs. Pursuant to the reporting specified in Paragraph 29, Defendant shall confirm to LA Waterkeeper in writing and with photographs, that each of the above BMPs has been implemented as set forth above.

## B. NO EXPOSURE CERTIFICATION

18. If Defendant intends to apply for an NEC for the Facility, at least thirty (30) days prior, it shall first confirm to LA Waterkeeper in writing that it has complied with all requirements set forth in the General Permit, and shall provide LA Waterkeeper with the NEC Checklist pursuant to General Permit § XVII.F.2 demonstrating that none of the following materials or activities are, or will be in the foreseeable future, exposed to precipitation:

a. Using, storing or cleaning industrial machinery or equipment, and areas where residuals from using, storing or cleaning industrial machinery or equipment remain and are exposed;

b. Materials or residuals on the ground or in storm water inlets from spills/leaks;

c. Materials or products from past industrial activity;

d. Material handling equipment (except adequately maintained vehicles);

e. Materials or products during loading/unloading or transporting activities;

f. Materials or products stored outdoors (except final products intended for outside use, e.g., new cars, where exposure to storm water does not result in the discharge of pollutants);

g. Materials contained in open, deteriorated or leaking storage drums, barrels, tanks, and similar containers;

h. Materials or products handled/stored on roads or railways owned or maintained by the Discharger;

i. Waste material (except waste in covered, non-leaking containers, e.g., dumpsters);

j. Application or disposal of processed wastewater (unless already covered by an NPDES permit); and

k. Particulate matter or visible deposits of residuals from roof stacks/vents evident in the storm water outflow.

19. Additionally, pursuant to General Permit § II.B.2.b, to qualify for the NEC, Defendant shall conduct an Annual Facility Comprehensive Compliance Evaluation ("Annual Evaluation") as described in General Permit § XV, pay an annual fee, and certify the Facility meets NEC requirements.

**C. SAMPLING AT THE FACILITY**

20. Defendant shall collect samples from Discharge Point 1 (1a, 1b, etc.) anytime the Facility's stormwater storage and hauling capacities is exceeded and there is a discharge. In the event of a discharge from any other Discharge Points, Defendant shall collect samples of storm water discharge from those Discharge Point(s) from four (4) Qualifying Storm Events, including the first two (2) Qualifying Storm Events during the first half of the Reporting Year and the first two (2) Qualifying Storm Events during the second half of the Reporting Year.

21. Timing. Sampling described above shall take place as soon as possible within the four (4) hour period required by the General Permit § XI.B.5. For any discharge that is pumped (as opposed to flowing naturally by gravity off-site), the sample shall be collected as soon as possible after the discharge commences.

22. Sampling Parameters. All samples collected pursuant to this Consent Decree shall be analyzed, at minimum, for the parameters listed in Table 1. Should Defendant conduct sampling and detect any additional parameters that are listed in 40 C.F.R section 131.38 and/or in the General Permit as a result of changed operations, a revised pollutant source assessment, or a new mandate from a regulatory agency, such parameter(s) shall be incorporated into this Consent Decree as if listed in Table 1 for all purposes, including any Action Plan requirements (as defined below). Defendant shall notify LA Waterkeeper of its intent to conduct sampling for any such additional parameters pursuant to the Reporting requirements as outlined in Paragraph 29 below, and the Parties shall meet and confer regarding the applicable Table 1 limit for such purposes within ten (10) days of such notification.

23. Laboratory and Holding Time. Except for pH samples, Defendant shall deliver all samples to a California-certified environmental laboratory for analysis within allowable hold times, pursuant to 40 C.F.R. Part 136. Analysis of pH will be

completed onsite using a portable instrument that is calibrated and used according to the manufacturer's instructions.

24. Detection Limit. Defendant shall request that the laboratory use analytical methods adequate to detect the individual pollutants at or below the values specified in the General Permit and Table 1 below.

25. Reporting. Defendant shall provide complete laboratory results of all samples collected at the Facility to SMARTS in accordance with the General Permit and concurrently notify LA Waterkeeper that the results have been uploaded to and certified on SMARTS.

26. Documentation of No Discharge. During rain events that occur during operating hours, Defendant shall observe potential Discharge Points and take necessary photographs to document that no discharge is occurring. Defendant shall maintain those photographs along with the rain/ gauge sensor data and produce them subject to the reporting requirements outlined in Paragraph 29 below.

**D. REDUCTION OF POLLUTANTS IN DISCHARGES**

27. Table 1 Numeric Limits. Defendant shall develop and implement BMPs for storm water discharges from the Facility that reduce pollutant concentrations to levels below those in Table 1.

**TABLE 1**[3]

| Parameter | Numeric Limit | Source of Limit |
|---|---|---|
| Total Suspended Solids (TSS) | 400 mg/L (instantaneous); 100 mg/L (average) | NAL |
| Oil & Grease (O&G) | 25 mg/L (instantaneous); 15 mg/L (average) | NAL |
| pH | 6.5-8.5 SU (instantaneous) | Basin Plan |
| Aluminum | 0.75 mg/L | NAL |
| Copper | 0.06749 mg/L (instantaneous); 0.0332 mg/L (average) | NEL NAL |
| Lead | 0.094 mg/L (instantaneous); 0.262 mg/L (average) | NEL NAL |
| Iron | 1.0 mg/L (average) | NAL |
| Zinc | 0.159 mg/L (instantaneous); 0.26 mg/L (average) | NEL NAL |

28. Table 1 Exceedances. An "Exceedance" of Table 1 is defined as follows: (a) where the concentration of any pollutant in any two (2) storm water samples from the same discharge point at the Facility during a Reporting Year exceeds the average numeric limit contained in Table 1; and/or (b) where the concentration of any pollutant in any one (1) storm water sample from the Facility exceeds an instantaneous numeric limit contained in Table 1.

29. Tri-Annual Reports. During the Term, on April 1, October 31, and January 31, Defendant shall send a written tri-annual report to LA Waterkeeper. This report may be in the form of an email and shall include:

[3] The numeric limits listed in Table 1 are for reference only, and the Table 1 limit applicable to each parameter shall be the then-effective limit provided by the applicable source, e.g., if the NAL for TSS is either increased to 110 mg/L or decreased to 90 mg/L, such new NAL, and not 100 mg/L, shall be used as the Table 1 limit for the purposes of this Consent Decree as if set forth herein. If the source of a limit in Table 1 is revised to no longer provide a limit for a given parameter, e.g., the NAL for TSS being removed, then the Parties shall meet and confer regarding the applicable Table 1 limit for such parameter for the purposes of this Consent Decree.

a. Documentation of all BMPs implemented pursuant to this Consent Decree, with representative photographs, demonstrating that each BMP has been implemented as set forth above.

b. Defendant's video documentation of rain events as required by Paragraph 16 above;

c. All stormwater hauling manifests and disposal records;

d. The laboratory results of any stormwater samples collected at the Facility, with an identification of all results that are above the threshold limits in Table 1.

e. Whether Defendant intends to conduct sampling for additional parameters as part of its stormwater compliance program.[4]

30. Action Plan. As of the Effective Date, and for the remainder of the Term, if (a) Defendant has an unauthorized non-storm water discharge in violation of Paragraph 12, or (b) storm water sample results demonstrate an Exceedance as defined above (each, a "Trigger Event"), Defendant shall prepare and submit to LA Waterkeeper a plan to address the conditions causing the Trigger Event ("Action Plan"). The Action Plan shall be submitted to LA Waterkeeper within thirty (30) days of the applicable Trigger Event.

a. Requirements. Each Action Plan shall include at a minimum: (1) the identification of the pollutant(s) discharged in excess of the numeric limit(s), the applicable discharge in smaller than a Design Storm, and/or the applicable unauthorized non-storm water discharge; (2) an assessment of the cause of each Trigger Event; (3) the identification of additional BMPs that shall be implemented to achieve compliance with the numeric limit(s), the

---

[4] In such instance, Defendant shall consider whether such parameter must be incorporated into this Consent Decree as if listed in Table 1 and the Parties shall meet and confer regarding the applicable Table 1 limit within thirty (30) days of such notification.

Design Storm requirement, and/or unauthorized non-storm water discharge prohibition, as well as the design plans and calculations of these additional BMPs; and (4) time schedules for implementation of the proposed BMPs. The time schedule(s) for implementation shall ensure that all BMPs are implemented as soon as possible, but in no event later than ninety (90) days following the submission of the Action Plan, unless a later implementation date is mutually agreed upon by the Settling Parties. Within seven (7) days of implementation of all of the BMPs set forth in the Action Plan , Defendant shall confirm to LA Waterkeeper in writing, with photographs, that such BMP has been implemented as set forth in the Action Plan.

b. Proposed BMPs. The following BMPs should generally be evaluated for inclusion in Action Plans to attain the Table 1 levels in the Facility's storm water discharges:

i. Hydrologic Controls. Installation of additional berms or equivalent structural controls necessary to reduce or prevent storm water from flowing off site other than through the engineered storm water conveyance system or storm water retention or treatment facilities.

ii. Automatic Sump Pump: Equip the sump pump at DP1 with an automatic float switch to automatically pump stormwater from the sump into the storage totes when the sump is half full.

iii. Pave. Patch, pave, or otherwise resurface areas of degraded pavement or asphalt throughout the Facility.

iv. Sweeping. The increased/more frequent use of sweepers and manual sweeping in otherwise inaccessible areas.

v. Treatment Systems. Installing an advanced storm water treatment system to provide more effective filtration treatment of storm water prior to discharge.

vi. Coating. Coating all galvanized roof surfaces associated with Defendant's owned or leased structures from which storm water flows into any drainage area.

vii. Evaluation of Existing BMPs. Replacing, rehabilitating, or eliminating existing BMPs, taking into account the age of the BMPs involved or employed, the engineering aspect of the application of various BMPs, and any adverse environmental impact of the BMPs.

c. Action Plan Review. LA Waterkeeper shall have thirty (30) days upon receipt of Defendant's complete Action Plan to provide Defendant with comments. Within fourteen (14) days of receiving LA Waterkeeper's proposed revisions to an Action Plan, Defendant shall consider each of LA Waterkeeper's recommended revisions and accept them or justify in writing why any comment is not incorporated. Action Plan(s) developed and implemented pursuant to this Consent Decree are an obligation of this Consent Decree. Any disputes as to the adequacy of an Action Plan shall be resolved pursuant to the dispute resolution provisions of this Consent Decree, set out in Section IV below. Disputes regarding the adequacy of a particular BMP shall not impact the schedule for implementing any other BMP set forth in the Action Plan.

d. Defendant shall revise the then-current SWPPP to reflect the changes required by the Action Plan, as set forth in Paragraph 34 below.

**E. VISUAL OBSERVATIONS**

31. Monthly Visual Observations. During the Term, appropriately trained staff of Defendant shall conduct monthly visual observations of the Facility including outfalls, Discharge Points(s), outdoor industrial equipment and storage areas, outdoor industrial activities areas, BMPs, and all other potential sources of industrial pollutants. Such inspections shall comply with all requirements of Section XI.A.1 of the General Permit. All Discharge Points shall also be inspected for accumulation of dust, sediment, sand, grit, oily substances, oily sheens upon any standing water, and other materials associated with operations at the Facility. During the Wet Season, such inspections shall further include observations of all storm water BMPs that are used only during the Wet Season at the Facility to ensure that operational BMPs are being implemented, structural BMPs are in good condition or working order, and that BMPs have been effective in producing clean conditions at the Facility. Such inspections shall further include observation as to whether there are any non-storm water discharges from the Facility.

32. Visual Observations Records. Defendant shall maintain observation records, including photographs or videos, to document compliance with Paragraph 31. Such records shall include, but not be limited to, the persons who completed the inspection, the date of the inspection, and notes sufficient to describe the completed activity and all observations thereof, including but not limited to: (i) whether BMPs are in a proper, working condition; (ii) whether any repair, replacement, or operation and maintenance is needed for any BMPs; (iii) other conditions that have the potential to lead to pollutant loading in storm water discharges; and (iv) photographs or videos of all the foregoing. Defendant shall provide LA Waterkeeper with a copy

of those records within seven (7) business days of receipt of a written request from LA Waterkeeper for those records.

### F. TRAINING AND PLANS

33. Employee Training Program. Within thirty (30) days of the completion of the process for review and comment on Defendant's Initial SWPPP, Defendant shall implement an employee training program that meets the following requirements and ensures (1) that there is a sufficient number of employees at the Facility designated to achieve compliance with the General Permit and this Consent Decree ("Designated Employees"), and (2) that these Designated Employees are properly trained to perform the activities required by the General Permit and this Consent Decree ("Training Program"):

a. Materials. Training materials should include, at minimum, a detailed Training Manual or Standard Operating Procedure, including drawings and diagrams where appropriate, for reference and use by Defendant's personnel to ensure effective implementation of all BMPs at the Facility;

b. Language. The training and training materials shall be available and offered in the language(s) in which relevant employees are fluent. If necessary, Defendant shall provide a translator or translators at all trainings where such translation is likely to improve staff comprehension of the Training Program and improve compliance with this Consent Decree and the General Permit;

c. Training Frequency. Training shall be provided by a QISP familiar with the requirements of this Consent Decree and the General Permit, and shall be repeated as necessary to ensure that all relevant employees are familiar with the requirements of this

Consent Decree, the Permit, and the Facility's SWPPP. All relevant new staff shall receive this training before assuming responsibilities for implementing the SWPPP;

d. Sampling Training. Defendant shall designate an adequate number of employees necessary to collect storm water samples as required by this Consent Decree, including training to ensure samples are properly collected, stored, and submitted to a certified laboratory;

e. Visual Observation Training. Defendant shall provide training on how and when to properly conduct visual observations to Designated Employees;

f. Non-Storm Water Discharge Training. Defendant shall train all Designated Employees at the Facility on the General Permit's prohibition of non-storm water discharges, so that Designated Employees know what non-storm water discharges are and how to detect and prevent non-storm water discharges;

g. Employees. All Designated Employees at the Facility shall participate in the Training Program annually. New Designated Employees shall participate in the Training Program within ninety (90) days of their hiring date; and

h. Records. Defendant shall maintain training records to document compliance with this Paragraph and shall provide LA Waterkeeper with a copy of these records within seven (7) business days of receipt of a written request.

34. SWPPP Revisions.

a. Initial SWPPP Revisions. Defendant shall amend the Facility's SWPPP to incorporate the requirements in this Consent Decree and comply with the General Permit and submit the complete,

updated SWPPP to LA Waterkeeper within thirty (30) days of the Effective Date for LA Waterkeeper's review and comment. The complete, updated SWPPP shall contain, at a minimum, the following elements:

i. A revised pollutant source assessment, including all elements required by Section X.G of the General Permit as well as assessments of the potential for the Facility's storm water discharges to contain pollutants for which the Receiving Waters are 303(d) listed and/or have Total Maximum Daily Loads;

ii. A detailed narrative description and assessment of each industrial activity with the potential to impact storm water quality occurring at the Facility as required by Section X.G of the General Permit;

iii. Descriptions of all BMPs in accordance with Section X.H.4 of the General Permit, including without limitation BMPs required by this Consent Decree;

iv. A set of site maps that comply with Section X.E of the General Permit and provisions of this Consent Decree, including accurately depicting the different drainage areas and flows;

v. A MIP as required by Sections XI and X.I of the General Permit;

vi. A designation (by position/title) of employees responsible for carrying out storm water management, monitoring, sampling and SWPPP implementation, e.g., visual

inspection of each specific area, monitoring each specific BMP, sampling, etc.; and

vii. A Training Program as described above in Paragraph 33.

b. Additional SWPPP Revisions.

i. Within thirty (30) days after approval of any Action Plan by LA Waterkeeper (or resolution pursuant to Dispute Resolution), Defendant shall revise the then-current SWPPP to reflect the changes required by the Action Plan and submit the complete, updated SWPPP to LA Waterkeeper for LA Waterkeeper's review and comment.

ii. Within thirty (30) days after any changes in industrial activities or sources of industrial pollutants, changes to Discharge Points, or changes to sections of the SWPPP identified in the SWPPP as requiring a SWPPP revision (including but not limited to, changes in Facility contacts or PPT members, changes or additions of BMPs, or changes in or additions of industrial activities that impact storm water discharge), Defendant shall revise the then-current SWPPP to reflect such changes and submit the complete, updated SWPPP to LA Waterkeeper for LA Waterkeeper's review and comment.

c. Review of SWPPP. For any SWPPP updates pursuant to Paragraphs 33.a and 33.b, LA Waterkeeper shall have thirty (30) days upon receipt of Defendant's complete SWPPP to provide Defendant with comments. Within thirty (30) days of receiving LA Waterkeeper's comments and proposed changes to the SWPPP, Defendant shall consider each of the comments and

proposed changes and either accept them or justify in writing why a change is not incorporated. The Parties agree to work in good faith to resolve any disputes with respect to the SWPPP, and any remaining disputes will be resolved through timely initiation of the dispute resolution procedures in Section IV below. Following its incorporation of proposed modification or additions (if any) into each revised SWPPP, Defendant shall upload the revised SWPPP to SMARTS.

### G. Compliance Monitoring and Reporting

35. LA Waterkeeper may conduct one annual site inspections (a "Site Inspection") during each Reporting Year during the Term for the purpose of ensuring compliance with this Consent Decree and the General Permit. In the event of a dispute regarding Defendant's compliance with this Consent Decree, and provided a Site Inspection would be relevant to resolving the Parties' dispute, the Parties agree to meet and confer regarding an additional Site Inspection at Plaintiff's request. Plaintiff shall not unreasonably request, and Defendant shall not unreasonably deny, one additional Site Inspection. Any Site Inspection shall occur during normal business hours, and LA Waterkeeper will provide Defendant with at least forty-eight (48) business hours' notice prior to a Site Inspection. For any Site Inspection requested to occur in wet weather, Plaintiff shall be entitled to adjust timing or reschedule during normal business hours in the event the forecast changes and anticipated precipitation appears unlikely, and thus frustrates the purpose of visiting the Facility in wet weather. Notice will be provided by electronic mail to the individual(s) designated below at Paragraph 61. During the Wet Weather inspection, Plaintiff may request that Defendant collect a sample of industrial storm water discharge from the Facility's designated industrial discharge point(s) referenced in its SWPPP, to the extent that such discharges are occurring. Defendant shall collect the sample and provide a split

sample to LA Waterkeeper. LA Waterkeeper's representative(s) may observe the split sample(s) being collected by Defendant's representative. LA Waterkeeper shall be permitted to take photographs or video recording during any Site Inspection.

36. Document Provision. During the Term, Defendant shall notify and submit documents to LA Waterkeeper as follows:

a. Defendant shall copy LA Waterkeeper, by electronic mail to the individual(s) designated below at Paragraph 61, on all compliance documents, monitoring and/or sampling data, written communications and/or correspondences, or any documents related to storm water quality at the Facility that are submitted to the Regional Board, the State Board, and/or any state or local agency, county or municipality.

b. Within seven (7) business days of receipt by Defendant, send to LA Waterkeeper, by electronic mail to the individual(s) designated below at Paragraph 61, any material compliance document, inspection report, written communication and/or correspondence, or any document related to storm water quality at the Facility received by Defendant from the Regional Board, the State Board, and/or any state or local agency, county, municipality.

37. Compliance Monitoring. Defendant shall partially defray costs associated with Plaintiff's monitoring of Defendant's compliance with this Consent Decree during the Term by paying Ten Thousand Dollars ($10,000.00), with half of that amount due within thirty (30) days of the Entry Date and the other half due no later than July 31, 2027. Payments pursuant to this Paragraph shall be made via Electronic Funds Transfer (preferred) or by check, made payable to: "Los Angeles Waterkeeper" via certified mail, return receipt requested to Los Angeles

Waterkeeper, c/o Senior Attorney, 360 E 2nd Street, Suite 250, Los Angeles, CA 90012. Please include the Facility's name and WDID on the payment. An email notification that payment has been sent shall be delivered on the date the check is put in the mail or payment is made by electronic wire funds transfer. Failure to submit payment as required under this Paragraph will constitute breach of the Consent Decree.

### H. ENVIRONMENTALLY BENEFICIAL PROJECT, LITIGATION FEES AND COSTS, MISSED DEADLINES, AND INTEREST

38. Environmentally Beneficial Project. To fund environmentally beneficial project activities that will reduce or mitigate the impacts of storm water pollution from industrial activities occurring in the Los Angeles River Watershed, Defendant shall make a payment totaling Twenty Thousand Dollars ($20,000.00) to Friends of the LA River made within thirty (30) days of the Entry Date, payable to Friends of the LA River and sent via overnight mail to Friends of the LA River, 570 W Ave 26 #250, Los Angeles, CA 90065. Failure to submit payment as required under this Paragraph will constitute breach of the Consent Decree.

39. LA Waterkeeper's Fees and Costs. Defendant shall pay a total of Forty-Five Thousand Dollars ($45,000.00) to LA Waterkeeper to partially reimburse Plaintiff for their investigation fees and costs, expert/consultant fees and costs, reasonable attorneys' fees, and other costs incurred as a result of investigating and filing the lawsuit, and negotiating a resolution of this matter. To satisfy the total amount due, three (3) payments of Fifteen Thousand Dollars ($15,000.00) shall be made with the first payment due sixty (60) days from the Effective Date, the second payment due one hundred and twenty (120) days form the Effective Date, and the third payment due one hundred and eighty (180) days from the Effective Date. The payments shall be made payable to: California Coastkeeper and delivered by overnight carrier to California Coastkeeper 1017 L St. PMB 308, Sacramento,

California 95814. Failure to submit payment as required under this Paragraph will constitute breach of the Consent Decree.

40. Missed Deadlines. In the event that Defendant fails to submit to LA Waterkeeper any payment, document, report, or communication required by this Consent Decree, LA Waterkeeper shall provide written notice to Defendant of such missed deadline. Defendant shall have seven (7) calendar days from receipt of such notice to cure such delinquency. If Defendant fails to cure such delinquency within seven (7) calendar days of receipt of LA Waterkeeper's notice, then Defendant shall pay a stipulated payment of Five Hundred Dollars ($500.00) per day. Such stipulated payments shall be made by check payable to: Friends of the LA River, and such funds shall be used for the sole purpose of funding environmentally beneficial projects, as described in Paragraph 38. Payment shall be sent via overnight mail to Friends of the LA River, 570 W Ave 26 #250, Los Angeles, CA 90065. Defendant agrees to make the stipulated payment within fourteen (14) days after the resolution of the event that precipitated the stipulated payment liability.

## IV. DISPUTE RESOLUTION

41. Meet and Confer. Either Party to this Consent Decree may invoke the dispute resolution procedures of this Section IV by notifying the other Party in writing of the matter(s) in dispute and of the disputing Party's proposal for resolution. The Parties shall then meet and confer in good faith (either telephonically or in person) within ten (10) business days of the date of the notice in an attempt to fully resolve the dispute no later than thirty (30) days from the date of the meet and confer.

42. Settlement Conference. If the Parties cannot resolve the dispute within thirty (30) days from the date of the meet and confer described in Paragraph 41, the Parties agree that the dispute may be submitted for formal resolution by filing a motion before the United States District Court for the Central District of California. The Parties agree to request an expedited hearing schedule on the motion.

43. In resolving any dispute arising from this Consent Decree before the Court, the prevailing Party shall be entitled to seek fees and costs incurred pursuant to the provisions set forth in Section 505(d) of the Clean Water Act, 33 U.S.C. § 1365(d), and applicable case law interpreting such provisions, or as otherwise provided for by statute and/or case law.

## V. MUTUAL RELEASE OF LIABILITY AND COVENANT NOT TO SUE

44. Plaintiff's Waiver and Release of Defendant. In consideration of the above, upon the Effective Date of this Consent Decree, Plaintiff, on its own behalf and on behalf of its officers and directors, release Defendant, its officers, directors, managers, employees, members, parents, subsidiaries, divisions, affiliates, successors or assigns, agents, attorneys and other representatives, from and waives all claims that were or could have been raised in the 60-Day Notice Letter and/or the Complaint up to and including the Termination Date of this Consent Decree.

45. Defendant's Waiver and Release of Plaintiff. In consideration of the above, upon the Effective Date of this Consent Decree, Defendant, on its own behalf and on behalf of its officers, directors, employees, parents, subsidiaries, affiliates and each of their successors or assigns, release Plaintiff, its officers and directors, from and waives all claims related to the 60-Day Notice Letter and/or the Complaint up to and including the Termination Date of this Consent Decree.

46. Nothing in this Consent Decree limits or otherwise affects Plaintiff's rights to address or take any position that it deems necessary or appropriate in an informal or formal proceeding before the State Board, Regional Board, EPA, or any other judicial or administrative body on any matter relating to Defendant's compliance at the Facility with the General Permit or the Clean Water Act occurring or arising after the Effective Date.

## VI. MISCELLANEOUS PROVISIONS

47. No Admission of Liability. The Parties enter into this Consent Decree for the purpose of avoiding prolonged and costly litigation. Neither the Consent Decree nor any payment pursuant to the Consent Decree shall constitute or be construed as a finding, adjudication, or acknowledgement of any fact, law or liability, nor shall it be construed as an admission of violation of any law, rule, or regulation. Defendant maintains and reserves all defenses it may have to any alleged violations that may be raised in the future.

48. Counterparts. This Consent Decree may be executed in any number of counterparts, all of which together shall constitute one original document. Telecopy and/or facsimile copies of original signature shall be deemed to be originally executed counterparts of this Consent Decree.

49. Authority. The undersigned representatives for Plaintiff and Defendant each certify that s/he is fully authorized by the Party whom s/he represents to enter into this Consent Decree. A Party's signature to this Consent Decree transmitted by facsimile or electronic mail shall be deemed binding.

50. Construction. The language in all parts of this Consent Decree shall be construed according to its plain and ordinary meaning, except as to those terms defined in the Permit, the Clean Water Act, or specifically herein. The captions and paragraph headings used in this Consent Decree are for reference only and shall not affect the construction of this Consent Decree.

51. Full Settlement. This Consent Decree constitutes a full and final settlement of this matter.

52. Integration Clause. This is an integrated Consent Decree. This Consent Decree is intended to be a full and complete statement of the terms of the agreement between the Parties and expressly supersedes any and all prior oral or written

agreements, covenants, representations, and warranties (express or implied) concerning the subject matter of this Consent Decree.

53. Severability. In the event that any provision, paragraph, section, or sentence of this Consent Decree is held by a court to be unenforceable, the validity of the enforceable provisions shall not be adversely affected; provided, however, that if such unenforceable provision is material to the Parties' agreement, the Parties shall meet and confer in good faith to negotiate a substitute provision that most closely reflects the original intent of the Parties.

54. Choice of Law. The laws of the United States shall govern this Consent Decree.

55. Diligence. Defendant shall diligently file and pursue all required permit applications for any required BMPs and shall diligently procure contractors, labor, and materials needed to complete all BMPs by the required deadlines.

56. Effect of Consent Decree. Compliance with this Consent Decree does not mean that Defendant is complying with the General Permit, the Clean Water Act, or any other law, rule, or regulation.

57. Negotiated Settlement. The Settling Parties have negotiated this Consent Decree, and agree that it shall not be construed against the Party preparing it, but shall be construed as if the Settling Parties jointly prepared this Consent Decree, and any uncertainty and ambiguity shall not be interpreted against any one Party.

58. Modification of the Consent Decree. This Consent Decree, and any provisions herein, may not be changed, waived, discharged, or terminated unless by a written instrument, signed by the Parties and approved by the Court. Any request to modify any provision of the Consent Decree, including but not limited to any deadline(s) set forth herein, must be made in writing at least fourteen (14) business days before the existing deadline(s) applicable to the provision(s) proposed to be modified.

59. Assignment. Subject only to the express restrictions contained in this Consent Decree, all of the rights, duties and obligations contained in this Consent Decree shall inure to the benefit of and be binding upon the Parties, and their successors and assigns. Defendant shall notify Plaintiff within thirty (30) days of any assignment.

60. Force Majeure. Neither of the Parties shall be considered to be in default in the performance of any of their respective obligations under this Consent Decree when performance becomes impossible due to a Force Majeure event. A Force Majeure event is any circumstance beyond a Settling Party's control, including without limitation, any act of God, war, fire, earthquake, flood, windstorm, pandemic, public health crisis, or natural catastrophe; criminal acts; civil disturbance, vandalism, sabotage, or terrorism; restraint by court order or public authority or agency; or action or non-action by, or inability to obtain the necessary authorizations or approvals from any governmental agency. A Force Majeure event shall not include normal inclement weather, economic hardship, inability to pay, or employee negligence. Any Party seeking to rely upon this Paragraph to excuse or postpone performance shall have the burden of establishing that it could not reasonably have been expected to avoid the Force Majeure event and which by exercise of due diligence has been unable to overcome the failure of performance. The Parties shall exercise due diligence to resolve and remove any Force Majeure event.

61. Correspondence. All notices required herein or any other correspondence pertaining to this Consent Decree shall be, the extent feasible, sent via electronic mail transmission to the e-mail address listed below, or if electronic mail is not feasible, then by certified U.S. mail with return receipt, or by hand delivery to the following addresses:

If to Plaintiff:
Los Angeles Waterkeeper
Benjamin Harris
Erina Kwon
Alexandra Ballesteros
360 E 2nd St., Suite 250
Los Angeles, CA 90012
Email: ben@lawaterkeeper.org
Email: erina@lawaterkeeper.org
Email: alex@lawaterkeeper.org
Phone: (310) 394-6162

With copies to:
Drevet Hunt
California Coastkeeper
1017 L St. PMB 308
Sacramento, California 95814
Phone: (415) 606-0864
Email: dhunt@cacoastkeeper.org

If to Defendant:
Troy Townley
Jimco, Inc.
1540 S. Greenwood Avenue
Montebello, CA 90640
Email: ttownley@jimcoinc.com
Phone: (323) 724-9835

With copies to:
Sherry Jackman
Greenberg Glusker LLP
2049 Century Park E
Los Angeles, CA 90067
Email: sjackman@greenbergglusker.com
Phone: (310) 201-7526

Notifications of communications shall be deemed submitted three (3) days after the date that they are postmarked and sent by first-class mail, or immediately after acknowledgement of receipt via email by the receiving Party. Any change of address or addresses shall be communicated in the manner described above for giving notices.

62. If for any reason the Federal Agencies should object to entry of this Consent Decree or to any portion of this Consent Decree or the Court should decline to approve this Consent Decree in the form presented, the Parties shall use their best efforts to work together to modify the Consent Decree within thirty (30) days so that it is acceptable to the Federal Agencies or the Court. If the Parties are unable to modify this Consent Decree in a mutually acceptable manner that is also acceptable to the Court, this Consent Decree shall immediately be null and void as well as inadmissible as a settlement communication under Federal Rule of Evidence 408 and California Evidence Code section 1152.

The Parties hereto enter into this Consent Decree and submit it to the Court for its approval and entry as a final judgment.

**IT IS SO ORDERED.**

**FINAL JUDGMENT**

Upon approval and entry of this Consent Decree by the Court, this Consent Decree shall constitute a final judgment between the Plaintiff and Defendant.

Dated: July 22, 2026

CENTRAL DISTRICT OF CALIFORNIA

HONORABLE PEDRO V. CASTILLO
United States Magistrate Judge